# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

**TAUNI DYRE,**

      Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,

      Defendant.

**No. 14-CV-3004-DEO**

**ORDER**

_____

This matter is before the Court pursuant to Tauni Dyre's [hereinafter Ms. Dyre] application for supplemental security income (SSI) under Title XVI of the Act. The Court has considered the parties' arguments and briefs and now enters the following.

## I. FACTUAL BACKGROUND

Ms. Dyre was born October 17, 1989. She was 22 years of age at the time of the hearing. Ms. Dyre has an eighth grade education and has not completed her GED. Prior to dropping out of school, Ms. Dyre participated in special education classes. Ms. Dyre does not drive and does not have a driver's license. At the time of the hearing, Ms. Dyre had one child, but did not have custody of the child. Ms. Dyre lives with

Grandparents and is supported by both her Mother and her Grandparents. Ms. Dyre has no work history and previously applied for benefits in 2006, 2007, and 2009.

Ms. Dyre claims disability based on variety of mental impairments, including: bipolar disorder, major depressive disorder, anxiety disorder, learning disabilities, generalized anxiety disorder, oppositional defiant disorder; avoidant personality disorder and mild mental retardation.

## II. PROCEDURAL HISTORY

Ms. Dyre filed her application for Supplemental Security Income ("SSI") benefits on January 28, 2011. At the time of the application, she was 21 years old. The claim was denied initially on March 4, 2011, and upon reconsideration on May 19, 2011. Ms. Dyre appeared for a hearing before an Administrative Law Judge [ALJ] on October 2, 2012. On November 16, 2012, the ALJ denied Ms. Dyre's claim. Ms. Dyre appealed, and her appeal was denied on October 30, 2013. Thus, the ALJ's decision stands as the final decision of the Commissioner. Ms. Dyre filed the present case on January 21, 2014.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Docket No. 9, Tr. 15.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the

requirements of their past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D.

Iowa 2009) (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc) *abrogated on other grounds* by <u>Higgins v. Apfel</u>, 222 F.3d 504, 505 (8th Cir. 2000)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the

burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Dyre has not engaged in substantial gainful employment since April 28, 2011, the alleged onset date. The ALJ stated that Ms. Dyre has the following severe impairments: Borderline Intellectual Functioning (BIF), Bipolar Disorder vs. Major Depressive Disorder, Post Traumatic Stress Disorder, Generalized Anxiety Disorder, and Avoidant Personality Disorder. However, the ALJ found that Ms. Dyre did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated:

> [t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

Docket No. 9, Tr. 17.

The ALJ considered Ms. Dyre's mental impairments using the "paragraph B" criteria and the "paragraph C" criteria as set out in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

416.920(d), 416.925 and 416.926) and determined that Ms. Dyre's mental impairments did not meet either set of requirements. Docket No. 9, Tr. 18.

The ALJ went on to consider residual functional capacity and concluded:

> [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexeiiional limitations (would have an SVP of 3): The claimant is limited to simple routine tasks and requires a job with no contact with the general public, or limited contact with fellow workers.

Docket No. 9 Tr. 19. The ALJ than considered the plaintiff's credibility under the <u>Polaski</u> standard and stated:

> although the claimant described disabling symptoms as a result of her medical impairments, the record is not consistent with those allegations. The above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and the claimant's subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on the claimant's capacities which were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

7

Docket No. 9, Tr. 22. The ALJ also discounted the statements

of Shelly Dyre, the Plaintiff's mother.

The ALJ determined that:

> [c]onsidering the claimant's age,
> education, work experience, and residual
> functional capacity, there are jobs that
> exist in significant numbers in the
> national economy that the claimant can
> perform (20 CFR 416.969 and 416.969(a)).

Docket No. 9, Tr. 22.

Based on Ms. Dyre's RFC and the testimony of the

vocational expert, the ALJ concluded that:

> [b]ased on the testimony of the vocational
> expert, the undersigned concludes that,
> considering the claimant's age, education,
> work experience, and residual functional
> capacity, the claimant is capable of making
> a successful adjustment to other work that
> exists in significant numbers in the
> national economy. A finding of "not
> disabled" is therefore appropriate under
> the framework of section 204.00 in the
> Medical-Vocational Guidelines.

Docket No. 9, Tr. 23.

## III. STANDARD OF REVIEW

This Court's role in review of the ALJ's decision

requires a determination of whether the decision of the ALJ is

supported by substantial evidence in the record as a whole.

See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935

8

(8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse

his/her decision.  Neal v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

**IV.  ISSUES**

In her brief, Ms. Dyre makes two primary arguments. First, Ms. Dyre argues that the ALJ erred in failing to find that Ms. Dyre's intellectual disability met Listing 12.05, Subsection C.  Second, Ms. Dyre argues that the ALJ failed to pose a complete hypothetical question to the vocational expert.  Intrinsic in these two arguments is an allegation that the ALJ also incorrectly discounted the testimony of Ms. Dyre and her mother.  The Court will address these issues below.

**V.  ANALYSIS**

In order for a Plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act].  The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

**A.  § 12.05 Mental Impairment**

Ms. Dyre argues that her condition meets or equals the criteria of Listing § 12.05C, regarding disability arising out of a mental impairment.  Specifically, Ms. Dyre argues the ALJ failed to recognize she had an IQ score within the requirements of Listing § 12.05C, and that the ALJ erred by finding that she did not have the required functional deficits prior to age 22.

The impairments described in the Listings are considered "severe enough to prevent an individual from doing any gainful activity."  20 C.F.R. § 416.925(a), see also <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).  "For a claimant to show that his impairment matches a [L]isting, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  <u>Sullivan</u>, 493 U.S. at 530.  If an impairment does not meet a Listing, but there are other findings that are at least of equal medical significance, such as unusual symptoms or additional limitations that are not contemplated by the Listing, an impairment may medically equal a Listing.  See 20

C.F.R. § 416.926(b)(1)(ii) & (3).  Medical equivalence is not designed to provide an alternative for conditions that "almost" meet the requirements of Listings.  The Government argues that the record does not support a medical equivalency evaluation.

Listing § 12.05C states:

> 12.05 Mental Retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.[and] . . . .
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The required criteria for Listing § 12.05C includes the criteria outlined in the introductory diagnostic paragraph, such as deficits in adaptive functioning initially manifested before age twenty-two; a valid IQ score in the appropriate range; and an additional severe impairment imposing

significant work-related limitations of function.[1]  See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A (structure of listing for mental retardation) & 12.05C (listing for mental retardation); see also <u>Maresh v. Barnhart</u>, 438 F.3d 897, 899-900 (8th Cir. 2006) (providing that requirements in introductory paragraph of Listing § 12.05C are mandatory). The lowest IQ score in a testing series is used under Listing § 12.05C.  See 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00D(6)(c).

In evaluating plaintiff's impairments under Listing § 12.05C, IQ level is generally presumed to be stable, but an ALJ should also evaluate test results to assure consistency with the rest of the record.  See <u>Clark v. Apfel</u>, 141 F.3d 1253, 1255 (8th Cir. 1998) ("Indeed, test results of this sort should be examined to assure consistency with daily activities and behavior.") (internal quotation marks and citation omitted).  The Commissioner is not required to accept a claimant's IQ scores, and may reject scores that are inconsistent with the record.  See <u>Christner v. Astrue</u>, 498

---

[1] Adaptive functioning refers to a person's ability, or attempt, to function in society in light of their impairments.

F.3d 790, 793-94 (8th Cir. 2007) (citing <u>Muncy v. Apfel</u>, 247

F.3d 728, 733 (8th Cir. 2001)); <u>Clark</u>, 141 F.3d at 1255-56

(citing <u>Mackey v. Shalala</u>, 47 F.3d 951, 953 (8th Cir. 1995)).

It is also important to note that a finding of mental

impairment so severe that it results in total disability does

not require a formal diagnosis of mental retardation. <u>Maresh</u>,

438 F.3d at 899.

In the present case, it is clear that Ms. Dyre has

significant mental impairments. However, in his analysis, the

ALJ stated:

> [t]he undersigned has also considered
> whether the "paragraph C" criteria of 12.02
> and 12.06 are satisfied. The undersigned
> has also considered whether the "paragraph
> C" criteria are satisfied. In this case,
> the evidence fails to establish the
> presence of the "paragraph C" criteria of
> 12.02, as the claimant does not have a
> medically documented history of a chronic
> organic mental disorder of at least 2
> years' duration that has caused more than
> a minimal limitation of ability to do basic
> work activities, with symptoms or signs
> currently attenuated by medication or
> psychosocial support, and one of the
> following: 1. Repeated episodes of
> decompensation, each of extended duration;
> or 2. A residual disease process that has
> resulted in such marginal adjustment that
> even a minimal increase in mental demands
> or change in the environment would be
> predicted to cause the individual to

decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. In this case, the evidence also fails to establish the presence of the "paragraph C" criteria of 12.06, as the claimant has not shown a complete inability to function independently outside the area of the home... Turning back to listing 12.05, the requirements in paragraph A are met when there is no evidence of mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded. As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. Similarly, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. While there are test scores in the file that would indicate the claimant achieved a Verbal IQ, Performance IQ, and Full Scale IQ of 68, 68, and 65 respectively, it was noted that the claimant "did not appear to put forth her best effort" which renders the scores invalid in the eyes of the undersigned. In fact, other IQ testing (K-Bit 2) obtained has indicated a composite IQ of 85 with verbal subsets of 81 and nonverbal of 93. Given the inconsistency in effort and scores, coupled with academic skills, a

> finding of Borderline Intellectual
> Functioning is likely more correct than
> Mild Mental Retardation. (Ex. 6F, 8F, 17F,
> 30F).

Docket No. 9, Tr. 18-19.

Ms. Dyre challenges each aspect of the ALJ's 12.05 Subsection C finding. Regarding adaptive functioning, Ms. Dyre argues:

> [i]n this case, Ms. Dyre met the first
> prong of Listing 12.05C, despite the lack
> of any finding in the decision as to
> whether she had a deficit in adaptive
> functioning prior to age 22... Ms. Dyre has
> demonstrated deficits in adaptive
> functioning well before she attained the
> age of 22. The record shows she struggled
> greatly in school, participating in special
> education programs throughout her
> childhood. (AR 237-252; 370-381; 385-387).
> When she was in the eighth grade, she
> scored below the 10th percentile in math
> and written language, and below the 25th
> percentile in reading. (AR 385-387). Ms.
> Dyre testified she did not complete high
> school, nor has she been able to fulfill
> the requirements necessary to acquire a
> GED. (AR 38-39). Ms. Dyre was diagnosed
> with major depression as early as 2004.
> (AR 438). She has also been hospitalized
> multiple times for suicide attempts (AR
> 553-554, 588-590, 590-592). She has never
> been able to live on her own, instead
> relying on her mother and grandparents.
> (AR 39-40, 46). She needs reminders to
> perform small daily tasks such as putting
> on deodorant, and her psychologist still
> noted body odor issues three years later.

> (AR 220, 583). Ms. Dyre required
> assistance in making change when purchasing
> things.

Docket No. 12, p. 8-9. Moreover, in her reply brief, Ms. Dyre argues, "[h]ere, the Commissioner does not contest Ms. Dyre's impairments satisfy Listing 12.05C's requirements of having an adaptive functioning deficit prior to age 22 or that she suffers from another physical or mental impairment imposing an additional significant work-related limitation of function. Commissioner's Brief at 7." Docket No. 14, p. 2. However, that is not precisely what the Defendant says. Defendant states:

> Plaintiff argues that she satisfies all
> three of these distinct requirements. Pl's
> Br. at 6-12. However, the only relevant
> requirement in this case is the IQ score
> because that is the factor the ALJ relied
> on to find that plaintiff did not meet
> Listing 12.05(c) (Tr. 18).

Docket No. 13, p. 7. Accordingly, the Defendant does not concede adaptive functioning, so much as argue that the ALJ did not even need to address that issue. But, in fact, the ALJ's decision states, "in this case, the evidence also fails to establish the presence of the "paragraph C" criteria of 12.06, as the claimant has not shown a complete inability to

function independently..." Docket No 9, Tr. 18. The ALJ specifically discredited Ms. Dyre's claims of limited functioning, stating, "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling limitations." Docket No. 9, Tr. 20. Accordingly, to consider the adaptive functioning issue, the Court must first consider the ALJ's credibility determination.

The standard regarding credibility findings is well settled. "In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. An ALJ must have sufficient justification for doubting a claimant's credibility. See Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) (quoting Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007)).

However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

As stated above, the ALJ may only discount the plaintiff's allegations if they are inconsistent with the record as a whole. In this case, Ms. Dyre testified that she can not drive, was not capable of getting a GED, and has problems understanding things like IQ testing. See Docket No. 9, Tr. 39-41. She testified that she lives with her Grandparents, who help take care of her. Docket No. 9, Tr. 40. Her Grandmother often prepares her meals and helps her with daily functions like reading the mail. Docket No. 9, Tr. 40-41. She also gets reading help from her mother. Docket No. 9, Tr. 41.

Ms. Dyre also testified that she often has anger issues, especially when she is frustrated. Docket No. 9, Tr. 42. She gets into arguments on average twice a week. Id. She also has crying spells twice a week. Docket No. 9, Tr. 43-44. She testified that she often stays in bed all day. Docket No. 9, Tr. 42.

Ms. Shelly Dyre, the Plaintiff's mother, also testified before the ALJ. Ms. Shelly Dyre testified that she also has a history of learning disabilities and received Social Security Disability as a result of those issues. Ms. Shelly Dyre testified that the Plaintiff lost custody of her son because she could not handle taking care of him. Docket No. 9, Tr. 46-47. Ms. Shelly Dyre also stated that she often helps the Plaintiff with reading and also takes her to appointments. Docket No. 9, Tr. 47-48.

In this case, the ALJ disregarded Ms. Dyre's subjective complaints without any appropriate analysis, nor did the ALJ properly articulate inconsistencies in the record that would demonstrate that Ms. Dyre's testimony was not supported by the record as a whole.

On a highly related note, the ALJ discounted Ms. Dyre's Mother's statements about the Plaintiff's condition. The 8th Circuit Court of Appeals has stated, "statements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints... " Willcockson v. Astrue, 540 F.3d 878, 880-81 (8th Cir. 2008). That Court went on to say, "witnesses such as the family

members who gave statements here often may be the only ones who witness a claimant's difficulties; though the ALJ is of course not required to accept all lay testimony, we think that it is almost certainly error simply to ignore it altogether." Willcockson, 540 F.3d at 881. The record, including indisputable facts, such as the fact that Ms. Dyre required special education, the fact that she dropped out of school, the fact that she lost custody of her child, the fact that she cannot get a driver's license, support her subjective allegations. So does her Mother's testimony. There is no medical or other evidence that discounts Ms. Dyre's testimony. Accordingly, the ALJ's determination that Ms. Dyre could function independently is not supported by substantial evidence.

The next issue is where the parties spend the bulk of their arguments.

IQ tests revealed that she had scores of 69 verbal, 68 performance, and 65 full scale. "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction

with 12.05."[2]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 D(6)(c).  Ms. Dyre's full scale score of 65 is her lowest score.  Thus, that score should be used to determine if Plaintiff is presumed disabled by listing 12.05C.  Because the score is between 60 and 70, Ms. Dyre is considered mildly retarded.

However, the ALJ did not find Ms. Dyre mildly retarded. The ALJ disregarded the score showing mild mental retardation, based upon Dr. Peters' statement that Ms. Dyre did not appear to put forth her best effort.  (The two state agency consultants, Dr. Moore and Dr. Shafer, disregarded that IQ score for the same reason.  See Docket No. No. 13, p. 9.)  It is undisputed that an ALJ can discount a test score if it is not supported by the record.  However, as discussed above, the record clearly contains evidence of Ms. Dyre's ongoing mental limitations.[3]  More importantly, as stated in the Plaintiff's

---

[2]  *Wechsler series* refers to a standardized intelligence test customarily used in these types of cases.

[3]  The ALJ also cited to a different IQ test which indicated that Ms. Dyre had borderline functioning.  However, the ALJ's analysis of the second test is cursory at best. Morever, as pointed out in the Plaintiff's Reply brief, "[m]oreover, the Commissioner's argument with respect to Ms. Dyre's IQ score also exposes further error committed by the ALJ:  failure to discuss the weight assigned to the opinions of the examining and non-examining physicians and the reasons such weight was assigned.  See C.F.R. § 404.1527."  Docket No.

brief, "[n]othing in the record indicates Dr. Peters concluded Ms. Dyre's test score was invalid. With respect to Ms. Dyre's effort in completing the test, Dr. Peters further stated, 'Even if she had put forth her best effort, her intellectual functioning would likely fall within the mild range of mental retardation. Id.'" Docket No. 12, p. 8, citing Docket No. 9, Tr. 480. Clearly, the medical examiner felt that Ms. Dyre's IQ score was valid. The Plaintiff correctly argues:

> [t]he ALJ's statement represents an improper assessment of the validity of Ms. Dyre's IQ score... Even though the ALJ in this case may be certified to administer IQ tests (AR 37), it is the examining psychiatrist or psychologist who either validates or invalidates the score... Here, rather than apply the proper legal standard, the ALJ substituted his own medical judgment for that of Dr. Peters' by determining Ms. Dyre's IQ score was invalid and concluded she had borderline intellectual functioning, thus committing legal error.

Docket No. 12, p. 9. Accordingly, the ALJ's determination that Ms. Dyre did not have a sufficiently low IQ score is not supported by substantial evidence and was in error.

The remaining record, including Ms. Dyre's lack of work history, her educational history, her testimony, her test

_____

14, p. 2.

scores, and her mental health history all support a finding of her disability.

The final 12.05C criteria requires that the Plaintiff have another physical or mental impairment imposing additional and significant work-related limitation of function. Listing 12.05, 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). The 8th Circuit has stated that to be 'significant,' the functional limitation under § 12.05(C) need not be disabling in and of itself, because then the prior prongs of 12.05C would be irrelevant. Accordingly, something less than a preclusion from any substantial gainful employment must be the appropriate standard. The 8th Circuit has endorsed a standard whereby significant simply means more than a slight effect on the Plaintiff's ability to do work. Sird v. Chater, 105 F.3d 401, 403-04 (8th Cir. 1997). Neither the ALJ nor the Defendant address this issue in any detail. However, the ALJ determined that Ms. Dyre suffers from Bipolar Disorder, Post Traumatic Stress Disorder, Generalized Anxiety Disorder, and Avoidant Personality Disorder. See Docket No. 9, Tr. 17. The ALJ admitted that "the combination of the claimant's impairments [are] severe in that she is significantly affected in the ability to perform basic work activities." Docket No. 9, Tr.

17. Based on that, Ms. Dyre seems to meet the 12.05C criteria for additional mental impairments. This conclusion is supported by Ms. Dyre's testimony, discussed above, the statements of her mother, Dr. Peters' opinion Ms. Dyre is "quite slow," Docket No. 9, Tr. 481, and Dr. Courtney's opinion, Docket No. 9, Tr. 515. Specifically, Dr. Courtney examined Ms. Dyre in 2006 and opined:

> [s]he seems to certainly have real learning difficulties that are going to impact her capacity for employment and she does not have the temperament to deal with the frustration of any sort of challenge. She is a highly anxious person who has a combination of Bipolar, PTSD, and deficit intelligence that leaves her quite compromised in ability to persist and self-direct when frustrated. It will likely take an extended period of time for her to be able to develop enough maturity that she could support herself at a limited skill level position... She has very real problems with restlessness and focus. Her basic mood stability is rather fragile.

Docket No. 9, Tr. 518.

In summation, the required criteria for Listing § 12.05C includes deficits in adaptive functioning initially manifested before age twenty-two; a valid IQ score in the appropriate range; and an additional severe impairment imposing significant work-related limitations of function. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A. Ms. Dyre has a

score in the valid range, which is supported by substantial evidence. Ms. Dyre has several, other, severe impairments including Anxiety Disorder, Bipolar Disorder, and Post Traumatic Stress Disorder. Accordingly, Ms. Dyre has met all § 12.05 criteria and is disabled as result of mild mental retardation.

### B. Hypothetical

When questioned by the ALJ, the vocational expert noted that Ms. Dyre has no past relevant work experience. However, the vocational expert testified that Ms. Dyre would be able to perform various unskilled work including her past relevant work and other jobs. Docket No. 9, Tr. 50-51. However, those questions were premised on the ALJ's conclusion that Ms. Dyre would be able to leave her home and interact with others at a functional intellectual level. When the hypothetical was modified to include a limitation on Ms. Dyre's pace and ability to interact with others, the vocational expert testified that the individual would not be able to perform the work or maintain work in the national economy. Docket No. 9, Tr. 51-53.

As has been repeatedly stated, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." Buckner v. Astrue, 646 F.3d 549, 560-61 (8th Cir. 2011). "[T]he hypothetical need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." Id. (quoting Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010)).

Based on the forgoing analysis regarding credibility, intellectual functioning, and social functioning, the Court is persuaded that the ALJ failed to properly articulate Ms. Dyre's limitations in the hypothetical question(s) to the vocational expert. The hypothetical questions that most closely stated all of Ms. Dyre's limitations were those posed to the vocational expert by Ms. Dyre's attorney. In response to those questions, the vocational expert stated that no jobs exist that Ms. Dyre could perform on a "sustained basis." Docket No. 9, Tr. 52.

## VI. CONCLUSION

It is clear the ALJ erred in finding that Ms. Dyre did not meet the Listing § 12.05C criteria and in constructing the

hypothetical scenarios posed to the vocational expert. The question thus becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing, "but the Eighth Circuit has held that a remand for an award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir. 1992).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. In this case, overwhelming evidence supports a conclusion that Ms. Dyre meets the Listing § 12.05C criteria. Accordingly, a finding of disability is appropriate.

**<u>Therefore, the decision of the ALJ is reversed and remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.</u>**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed

within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 4th day of March, 2015.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa